989 A.2d 2

COMMONWEALTH of Pennsylvania, Appellee

v.

CAM LY, Appellant.

Supreme Court of Pennsylvania.

Jan. 19, 2010.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## ORDER

PER CURIAM.

**AND NOW,** this 19th day of January, 2010, the Application for Reargument and Request to Supplement Previously Filed Application for Reargument are **DENIED.**

Justice SAYLOR files a dissenting statement.

Justice SAYLOR, dissenting.

In his application for reargument in this capital post-conviction matter, Applicant seeks reconsideration of the Court's decision that his claim of ineffective assistance of his trial counsel at the penalty phase of his trial (for failing to investigate and present evidence in mitigation) is defaulted.

In particular, Applicant challenges the determination that an extra-record claim must be raised by direct-appeal counsel on pain of waiver. According to Applicant, it is not possible for such counsel to conduct the essential investigation and preparation of extra-record claims, since counsel lacks the resources and authority (*i.e.,* subpoena power) necessary to conduct an adequate inquiry. Applicant also complains that he raised this "resources" issue in his post-conviction appellate brief, but the Court neglected to address it in its opinion. According to Applicant, particularly in light of the strong post-conviction evidence of constitutionally deficient stewardship on the part of his trial counsel, the circumstances amount to "a complete breakdown in the imposition of capital punishment in Pennsylvania, and the consequent imposition of an *ipso jure* unreliable, and thereby unconstitutional, sentence of death." Application for Reargument at 1.

I believe Applicant's contentions merit further consideration. This Court has candidly recognized that there is a serious time-and-resources issue connected with the obligation to raise extra-record claims on direct appeal. *See Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 737–38 (2002) (explaining that "time is necessary for a petitioner to discover and fully develop claims related to trial counsel ineffective-

ness").[1] Indeed, the Court went so far as to characterize such task as "Herculean" and referenced another jurisdiction's more flexible practice in concluding "it is not even clear if appellate counsel's duty extends to finding extra-record claims[.]" *Id.* at 737 (citing *Woods v. State*, 701 N.E.2d 1208, 1222 (Ind.1998) (concluding that "a claim of ineffective assistance of appellate counsel is not an adequate back door to a full adjudication of ineffectiveness of trial counsel")).[2] For these reasons and other related ones, the *Grant* Court settled on a general practice of deferring such claims to post-conviction review in order to offer "a petitioner the best avenue to effect his Sixth Amendment right to counsel." *Id.* at 738.

While Grant thus redressed the time-and-resources problem for cases to which the new rule applied, the Court nevertheless declined to do the same for cases, such as Applicant's, which already had passed the direct-appeal stage at the time of *Grant*'s issuance. *See id.* at 738–39. The Court has never explained, however, how requiring Herculean endeavors of counsel in this latter category of cases reconciles with the requirement of fairness.

By way of further background, the derivation of the inflexible rule that direct-appeal counsel must raise all extra-record claims, on pain of waiver, is not one of distinction. As explained in *Grant*, the rule derives from a footnote *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977), stating that "ineffectiveness of prior counsel must be raised at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant." *Id.* at 695 n. 6. The difficulty with *Hubbard* is that most of supporting decisions referenced by the *Hubbard* Court expressed (or at least allowed for) necessary exceptions to the issue-preservation requirement, including "where peti-

1. While *Grant* spoke in terms of "time" necessary to prepare extra-record claims, time and resources issues are inextricably interrelated (since the amount of time required to perform a given task is dependent upon the available resources). Thus, it is readily apparent that *Grant*'s reasoning touches on both concerns.

2. The *Grant* Court also indicated that claims of deficient stewardship on the part of trial counsel can only be placed in appropriate context after the direct appeal process. *See Grant*, 813 A.2d at 737.

tioner is represented on appeal by new counsel, but the grounds upon which the claim of ineffective assistance are based do not appear in the trial record." *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435, 438 (1975). In this regard, the pre–*Hubbard* jurisprudence was not inflexible; rather, it embodied a *Grant*-like exception for extra-record claims (among others), thereby already accounting for the very time-and-resources difficulties which the *Grant* Court considered it so important to remediate. *See Grant*, 813 A.2d at 733 ("[C]ontrary to the absolute rule we currently follow, the rule at its inception created general guidelines for raising claims of ineffectiveness, while recognizing that in order for the rule to work in practice, common sense required some exceptions.").

*Hubbard*, however, neglected to account, in any way, for the flexibility afforded by the *Dancer* exceptions. Rather, it appears the exceptions, including *Grant*'s forerunner, were simply shorthanded out of existence.[3]

In some subsequent decisions, *Hubbard* (or its progeny) and *Dancer* were cited by the Court side-by-side, as if both embodied the same rule. *See, e.g., Commonwealth v. Upsher*, 497 Pa. 621, 444 A.2d 90, 92 n. 3 (1982). At least in the early aftermath of *Hubbard*, therefore, it would have taken a vigilant practitioner indeed to surmise that the Court had intentionally jettisoned essential interests-of-justice exceptions via footnote, without any developed explanation for such a material change.[4]

**3.** As another contextual reference, *Hubbard* was issued relatively soon after the abolition of the plain error rule, eliminated in Pennsylvania (at least for non-capital criminal cases) in *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). The Court thus had recently removed a mechanism which is commonly applied elsewhere to reach claims in the interests of justice, *see, e.g.,* Fed.R.Crim.P. 52(b), and some disharmony resulted in terms of settling the new review landscape. *See, e.g., Commonwealth v. Hennessey*, 485 Pa. 647, 403 A.2d 575 (1979) (equally divided opinion). Notably, the relaxed waiver doctrine had served as an analogue to (or the vestige of) the plain error rule applicable to capital cases only, and similar discordance occurred in the wake of the retroactive abolition of this doctrine as well. *See, e.g., Commonwealth v. Ford*, 570 Pa. 378, 809 A.2d 325 (2002) (plurality).

**4.** Indeed, in various cases involving the performance of appellate counsel through the mid–1990s, several attorneys have testified they did not

By the mid–1990s, the Court had institutionalized the *Hubbard* rule on its present terms (for pre–*Grant* cases), but, at least to my knowledge, the time-and-resources issues were not addressed at any depth until *Grant*. Again, however, although *Grant* detailed the many serious difficulties with the application of the *Hubbard* rule, it did not reconcile the decision to continue to apply *Hubbard* to the category of cases in which Applicant's appeal falls with principles of fundamental fairness.[5] Thus, as far as I can tell, *Hubbard's* cryptic abandonment, of what we now recognize to be the appropriate manner of treatment for extra-record claims, has never been anchored in reasoned, judicial terms.

In light of Applicant's present entreaty, it is my considered judgment that it is time for us to provide the essential explanation or, alternatively, to restore the *Dancer* exception for all cases if that is the course which best comports with the requirement of fundamental fairness. *Grant* itself supports Applicant's position that the latter course is merely a matter of "common sense." *Grant*, 813 A.2d at 733.

For the above reasons, I would grant the application for reargument and direct the Prothonotary to issue a briefing schedule.

---

know of an obligation to raise extra-record claims on direct appeal. *See, e.g., Commonwealth v. Gibson*, 597 Pa. 402, 951 A.2d 1110, 1118 (2008); *Commonwealth v. Romero*, 595 Pa. 275, 938 A.2d 362, 400 (2007) (Saylor, J., concurring and dissenting).

**5.** I recognize that there is a serious concern for finality manifest in the Post Conviction Relief Act and in our common-law habeas corpus jurisprudence. This Court has always maintained, however, so long as our jurisdiction is secure, that such finality cannot be achieved, consistent with constitutional values, at the expense of fundamental fairness.