J-S20040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ELIGAH HAYES, | : | |
| | : | |
| Appellant | : | No. 1992 EDA 2015 |

Appeal from the PCRA Order June 26, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0006331-2009

BEFORE:   BOWES, J., OTT, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                              **FILED JUNE 20, 2017**

Eligah Hayes appeals from the order entered on June 26, 2015, in the Court of Common Pleas of Philadelphia County, denying him relief without a hearing on his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq*.  In this timely appeal, Hayes raises three claims.  He argues the PCRA Court erred in failing to find trial counsel was ineffective for: 1) failing to present two additional alibi witnesses; 2) failing to present the same witnesses during sentencing; and 3) failing to request a DNA test of clothing found near the scene of the crime.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.[1]

---

[1] At trial, Hayes was convicted of attempted murder, 18 Pa.C.S. § 901(a); aggravated assault, 18 Pa.C.S. § 2702(a); robbery, 18 Pa.C.S. §
*(Footnote Continued Next Page)*

Our standard of review for the denial of PCRA relief is both well settled and often repeated:

> Our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa. Super. 2011). This Court "will not disturb findings that are supported by the record." **Id.**

**Commonwealth v. Watley**, 153 A.3d 1034, 1039-40 (Pa. Super. 2016).

The standard for reviewing a claim of ineffective assistance of counsel is similarly well established.

> When analyzing ineffectiveness claims, we begin with the presumption that counsel was effective. **Commonwealth v. Spotz**, 610 Pa. 17, 18 A.3d 244, 259-60 (2011). "[T]he defendant bears the burden of proving ineffectiveness." **Commonwealth v. Ligons**, 601 Pa. 103, 971 A.2d 1125, 1137 (2009). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." **Id.** "A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs." **Id.** To establish the second ineffectiveness prong, the petitioner must prove that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Spotz**, 18 A.3d at 260 (*quoting* **Commonwealth v. Williams**, 587 Pa. 304, 899 A.2d 1060, 1064 (2006)). To establish the third prong, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." **Id.**

*(Footnote Continued)* ───────────

3701(a)(1)(ii); and conspiracy, 18 Pa.C.S. § 903. He received an aggregate sentence of 30 to 60 years' incarceration.

*Id.* at 1040.

We quote the factual history of this matter from the PCRA court's Pa.R.A.P. 1925(a) opinion.

On October 16, 2008, at approximately 10:00 p.m., complainant Vernon Kulb III entered a grocery store at the corner of Fifth[2] [sic] and Sepviva Streets in Philadelphia. As he was leaving the store, Mr. Kulb noticed two men, later identified as defendants Eligah Hayes and [Craig] Woodard, crouched behind a van and looking in his direction. Mr. Kulb proceeded on his bicycle toward Amber and Cumberland Streets where he was to meet his girlfriend before going home. Defendants Hayes and Woodard approached Mr. Kulb on foot, along with a third unidentified man on a bicycle, with guns drawn. When the three men reached complainant, co-defendant Woodard struck Mr. Kulb in his head with his gun, sat on his back and proceeded to rummage through his pockets while defendant Hayes pointed a gun in his face. Co-defendant Woodard then shot Mr. Kulb in the back and the three men fled the area.[3] During a search of the vicinity of the shooting, police officers recovered a .45 semiautomatic pistol and a .44-caliber Ruger Super Blackhawk revolver.

Following the incident, Mr. Kulb was taken to the hospital and treated for his serious and permanent injuries. While in the hospital, he was questioned by police but refused to tell anyone who was responsible for shooting him. Approximately one month after the shooting, Mr. Kulb identified defendants Hayes and Woodard from separate photographic arrays. During the interview, Mr. Kulb stated that neither of the two defendants were responsible for shooting him, and blamed the third unidentified man as his assailant. Later, explaining the he had been pressured to falsely identify the shooter as the unidentified man, Mr. Kulb identified co-defendant Woodard as the shooter

---

[2] It is actually Firth Street.

[3] The notes of testimony reflect that Kulb was shot at approximately 10:15 p.m.

and further implicated defendant Hayes in the shooting as articulated above.

PCRA Court Opinion, 1/19/2016, at 2-3.

Additionally, relevant to this appeal, we note that Hayes presented an alibi defense, claiming to have been in Atlantic City, with his mother, at her home, at the time of the shooting. N.T. 9/9/2010, at 100. He further testified that Woodard had called him at 10:09 p.m. on the night of the shooting, informing Hayes that he was at the hospital being treated for a head injury suffered as the result of an assault by an unknown person. *Id*. at 107-08. Woodard also informed Hayes that he had been informed by a person named Lou, that Kulb had been shot.[4] *Id*. at 110. Hayes supported his claim by presenting a purported copy of Woodard's phone bill showing a phone call at 10:09 p.m. to a number he claimed was his mother's. *Id*. at 101.

On cross-examination, Hayes specifically denied Woodard had told him that Hayes was implicated in the shooting; Hayes also denied he had told his mother that he had been accused of the crime. *Id*. at 117-20. The phone bill was revealed to be in the name of Joan Johnson. *Id*. at 112. In addition, when reminded that Kulb had not been shot until approximately 10:15 p.m., six minutes after the phone call, Hayes allowed that a 10:38

_____

[4] Kulb also testified that a person named Louis stole his bicycle after he had been shot. It was not revealed if Louis and Lou are the same person.

p.m. phone call listed on the bill might have been the relevant phone call. *Id*. at 112, 114. When confronted with the fact the hospital records showed Woodard was not admitted until 12:25 a.m.,[5] Hayes explained that at the time of the phone call, approximately two hours prior to admission, Woodard said he was at the hospital, filling out paperwork. *Id*. at 135.

Hayes' alibi witness was his mother, Alia Macey. Macey testified that at approximately noon on the day of the shooting, Hayes received a phone call. *Id*. at 145, 140. In response to that call, he began crying and told her that he was being accused of shooting Kulb. *Id*. at 140. Macey told him not to worry because he clearly could not have committed the crime, having been with her. *Id*. at 141. When confronted with the fact that Kulb did not identify Woodard or Hayes as the attackers for more than one month after the crime, Macey explained that Kulb had put the word out on the street. *Id*. at 147-48. When asked how her son could receive a phone call identifying him as the person who shot Kulb hours before Kulb was shot, Macey testified her medications might have confused her about the time. *Id*. at 152.

_____

[5] Woodard did not testify at trial. The only evidence he presented was a copy of the hospital records showing he was not admitted until 12:25 a.m., approximately two hours after the shooting.

Against this evidence, Hayes first claims his trial counsel was ineffective for failing to call two additional alibi witnesses. Based on our review, this claim fails.

Here, we agree with the PCRA court's determination that Hayes' offer of proof failed to satisfy the legal standard for relief for a claim of failure to call a witness. In order to prevail on such a claim, a petitioner must show: (1) the witness existed, (2) the witness was available to testify, (3) counsel knew or should have known about the witness; (4) the witness was willing to testify; and (5) the absence of the testimony was so prejudicial as to deny the petitioner a fair trial. **See Commonwealth v. Thomas**, 44 A.3d 12 (Pa. 2012).

The first additional alibi witness was Leeann Mobley, a next-door neighbor of Alia Macey. Leeann Mobley provided an affidavit dated 12/23/2014. Although this was Leeann Mobley's affidavit, it is signed by both Leeann and Deborah Mobley.[6] In this affidavit, Mobley claims she went to Macey's home at approximately 9:45 p.m. in order to ask her for a cigarette. At that time, she saw Hayes sitting at the computer, talking on the telephone. He later told her about his predicament and she remembered that as the night she borrowed a cigarette from Macey. **See** Mobley Affidavit, December 23, 2014. Despite the proffer of this affidavit, it is

_____

[6] We believe Deborah Mobley to be Leeann's grandmother.

undeniable that during trial Hayes specifically testified that Mobley could have testified as to his whereabouts but was unable to attend the trial because she had recently given birth. *See* N.T. Trial, 6/9/2010, at 108-09. Accordingly, Mobley was not available to testify and counsel cannot be ineffective for failing to call her to the stand.

The second proposed alibi witness was James Butcher who provided an undated affidavit explaining while he cannot remember the date or time, he saw Hayes at his mother's house on the computer when he received a phone call telling him what had happened. *See* Butcher Affidavit. As the PCRA court noted, a proposed alibi witness who cannot testify as to the date or time he saw the accused is not, truly, an alibi witness. *See* PCRA Court Opinion, at 5-6. Because Butcher cannot state the actual date or time he saw Hayes, the lack of his testimony cannot be prejudicial to Hayes. Therefore, counsel cannot be ineffective for failing to call James Butcher to testify.

Next, Hayes claims trial counsel was ineffective for failing to call Mobley and Butcher to testify during sentencing. Hayes argues these witnesses would have testified regarding Hayes' "involvement in his children's lives, his good character as a family member and friend and about the hardships that he suffered as a child." Appellant's Brief at 14. This argument fails.

First, we note that neither affidavit provides any statement regarding Hayes' character or that either Mobley or Butcher would have been willing

and able to provide such testimony at sentencing. Accordingly, Hayes is not entitled to relief on this issue.

Additionally, the PCRA judge[7] noted that at sentencing he had the benefit of a pre-sentence report, mental health evaluation, guideline computations and argument by defense counsel. Judge Byrd considered all of those factors as well as balancing Hayes' need for rehabilitation and the needs of society. In doing so, Judge Byrd opined that the proposed character witnesses would not have altered the sentence. Accordingly, Hayes cannot demonstrate prejudice and cannot prevail on an ineffective assistance of counsel claim.

Although not included in his statement of questions involved, Hayes also argues his sentence was excessive and had the court been informed of the mitigating factors Butcher and Mobley would have provided, his sentence would have been appropriately lessened.[8] As indicated above, the sentencing court stated such information would not have affected the sentence imposed. Further, the sentence imposed, 20-40 years'

---

[7] The Honorable Sandy L.V. Byrd was both trial and sentencing judge as well as the PCRA judge.

[8] We accept this argument as being fairly included in the ineffective assistance of counsel claim of failing to call character witnesses at sentencing. *See* Pa.R.A.P. 2116(a). We do not accept this issue as an ineffective assistance of counsel claim for failure to file a post-sentence motion challenging the discretionary aspects of Hayes' sentence. That would be a separate claim requiring a separate question and argument. *Id*.

incarceration for attempted murder was within the statutory limits as well as within the standard range for a prior record score of five. *See* N.T. Sentencing, 7/30/2010, at 7, 25-26. Therefore, Hayes is not entitled to relief on this aspect of his claim.

Hayes' final argument is that trial counsel was ineffective for failing to request DNA testing on the "jacket and a sweatshirt"[9] found near the crime scene. Hayes provides no citation to the certified record regarding the "jacket and sweatshirt." We believe he means the "jacket-type thing almost like a hoody kind of thing" found by Police Officer Lonnie Claussen. N.T. Trial, 6/8/2010, at 139. If so, these are one in the same, not two separate articles of clothing. In any event, Hayes' clothing, on the night of the crime, was never described. Accordingly, even if the clothing had been tested for DNA, and even if that test indicated Hayes did not wear the clothing, the test would not exonerate Hayes. Therefore, Hayes suffered no prejudice in the failure to test the jacket/hoody for DNA. With no prejudice, counsel was not ineffective for failing to request the test.

In light of the foregoing, our review of this matter demonstrates the PCRA court's denial of relief is supported by the record and free from legal error and abuse of discretion.

Order affirmed.

---

[9] Appellant's Brief at 16.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/20/2017