J-S62009-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF |
|---|---|
| Appellee | PENNSYLVANIA |
| v. | |
| DESMOND MARTIN, | |
| Appellant | No. 2220 EDA 2012 |

Appeal from the PCRA Order entered June 5, 2012,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0009280-2007

BEFORE:  ALLEN, OLSON, and OTT, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED SEPTEMBER 26, 2014**

Desmond Martin ("Appellant") appeals from the order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. sections 9541-46.  We affirm.

The PCRA court summarized the pertinent facts as follows:

> On June 7, 2007, [at] approximately 10:00 PM, [the victim] resided at 819 Rittenhouse Street, Philadelphia, PA and was asleep in her bedroom when she was awakened by Appellant and another male.  [The victim] testified that Appellant was holding a weapon and ordered her to turn her head around and put her head into the pillow.  When [the victim] complied, Appellant stated "you are going to die tonight," and punched her in the head.  Appellant wrapped [the victim's] hands with a telephone cord and tied her to the bedpost.  He similarly tied [the victim's] feet with an extension cord to the base of the bed.  [The victim] asked Appellant what he wanted and he responded that he wanted money.  Shortly thereafter, Appellant pulled down the shorts [the victim] was wearing, climbed on top of her, and put his penis into her anus and into her vagina.  After Appellant raped [the victim,] he located her

pocketbook, retrieved her ATM card, and coerced [the victim] into telling him the PIN number. He then asked her: "you ever have a shotgun up your ass?", at which point [the victim] felt a cold metal object touch her anus. Although [the victim] did not see or hear the other male in the room, she heard Appellant state: "Don't say nothing. She know who you are. . . . Yeah, I got my boy here. He got a .357 Magnum on the back of your head, so you better not be lying to me about the numbers. . . . Yeah, I'll be back. . . ." Appellant then went downstairs. Later, [the victim] was able to free herself. Fearing that Appellant might still be in her home, she jumped out of the bedroom window and onto the roof. She ran to her neighbor['s] home and police were called.

Philadelphia Police Detective Diane Vasaturo met with [the victim] and recorded her statement. [The victim] explained that she knew Appellant. She told [Detective] Vasaturo and she testified that Appellant was a friend of her nephew and that Appellant resided in her home for several weeks prior to the rape. She was unambiguous in her identification of Appellant as her assailant. [The victim] also told Detective Vasaturo that [Appellant] took her ATM card. [The victim] was then transported to the Episcopal Hospital for treatment. Officer James Owens took custody of the clothing [the victim] was wearing at the time of the incident and the sexual assault evidence collection kit which was used by hospital personnel during [the victim's] physical examination and treatment[,] and turned the evidence over to the Police Criminalistics Laboratory. An inspection in and around [the victim's] residence discovered a shirt lying on the ground near the rear door to [the victim's] home, damage to the rear door frame, and a lock which was torn from the wall to the house. A jacket and sneakers belonging to Appellant were recovered from the rear bedroom where he stayed while residing in [the victim's] home. Also recover[ed] was the wire which was used to restrain [the victim] during the rape. This physical evidence was also turned over to the Police Criminalistics Laboratory.

Police Officer Laura Hammond testified that on June 18, 2007, Appellant came into her office and stated that he needed to give a DNA sample in reference to an incident that happened with his girlfriend. Appellant's DNA sample

was then turned over to the Police Criminalistics Laboratory for testing and analysis.

Patricia Lane received [the victim's] sexual assault kit at the laboratory and examined a vulvular sample. She determined that the sample was positive for the presence of spermatozoa. Laura Wisniewski testified that she received the DNA sample from Appellant and compared and analyzed [the victim's] vulvular sample with Appellant's DNA and found [the victim's] vulva swab positive for the presence of Appellant's DNA.

Later, [the victim] contacted her bank and learned that [two] ATM withdrawals of [$205.50 and $201.50] were made from her account[s] on June 8, 2007. [The victim] neither made nor authorized the withdrawals.

In defense, Appellant testified that shortly after he met [the victim,] they had dinner together and upon returning to [the victim's] home, they began a sexual relationship. He stated that after he assisted [the victim] in retrieving her stolen jewelry, [the victim] offered to give him a monetary reward but that he refused it and that [the victim] later invited him to live in her home.

Appellant further testified that on June 7, 2007 he returned to [the victim's] home after work at approximately 9:30 PM and that they ate pizza, watched a movie, and then he and [the victim] engaged in anal sex. Appellant stated that after having sex with [the victim], Appellant explained to [her] that he had a girlfriend who was becoming suspicious and that his girlfriend had problems with him living at [the victim's] house. After their discussion Appellant left [the victim's] house. When he returned the next day he observed police outside and at some point later [the victim's] nephew told [Appellant] that [the victim] had been raped and that she was suspicious of everyone. Appellant explained that he discovered that the police were looking for him and that he went to the police station and submitted a DNA sample in an effort to clear his name. Appellant denied raping [the

victim] and denied tying her and doing anything against her will.

PCRA Court Opinion, 10/31/12, at 3-6 (citations and footnote omitted).[1]

On April 4, 2008, a jury convicted Appellant of rape, burglary, robbery, and related offenses. On July 15, 2008, the trial court sentenced him to an aggregate term of twenty to forty years of imprisonment, and a consecutive ten-year probationary term. Appellant filed a timely appeal to this Court. In an unpublished memorandum filed on October 20, 2009, we affirmed Appellant's judgment of sentence. *Commonwealth v. Martin*, 987 A.2d 819 (Pa. Super. 2009). On April 27, 2010, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Martin*, 993 A.2d 900 (Pa. 2010).

On December 11, 2009, while Appellant's petition for allowance of appeal was still pending, he filed a *pro se* PCRA petition. The PCRA court appointed counsel, and, on December 6, 2011, after the Supreme Court had denied Appellant's petition for allowance of appeal, PCRA counsel filed a motion to withdraw and no-merit letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On April 20, 2012, the PCRA court

_____

[1] The victim actually testified that she "didn't see or hear a second person." N.T., 3/28/08, at 50. Ostensibly, Appellant led her to believe a second person was present so that she would not try to escape.

issued Pa.R.Crim.P. 907 notice of its intent to dismiss Appellant's PCRA petition without a hearing. Appellant did not file a response. By order entered June 5, 2012, the PCRA court dismissed Appellant's petition. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant asserts that the PCRA court erred in dismissing his PCRA petition because he raised two claims that were of arguable merit. According to Appellant, the PCRA court should not have accepted PCRA counsel's assessment of "no merit" with regard to his claims that trial counsel was ineffective for failing to call Appellant's girlfriend as a witness, and that "the Commonwealth withheld evidence that Appellant could not be identified in bank videotapes as withdrawing money from an ATM machine[.]" Appellant's Brief at 8. We disagree.

In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." *Id.* To be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated

in section 9543(a)(2) of the PCRA. One such error involves the ineffectiveness of counsel.

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Id.* "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. ***Commonwealth v. Travaglia***, 661 A.2d 352, 357 (Pa. 1995). Counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*), *appeal denied*, 852 A.2d 311 (Pa. 2004).

Appellant asserts that trial counsel was ineffective for failing to present the testimony of Appellant's girlfriend at trial. In order to establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) [trial] counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied [the appellant] a fair trial.

*Commonwealth v. Thomas*, 44 A.3d 12, 23 (Pa. 2012) (citations omitted).

Appellant argues that he met his burden of establishing trial counsel's ineffectiveness because:

> There is no dispute that the [witness] in this case existed or that trial counsel knew or should have known of [the witness]. In fact there is no discussion in [PCRA counsel's] "no merit" letter regarding the girlfriend Lashanna of Appellant[.] [Appellant] was not given the opportunity to demonstrate that [Lashanna] would have been available and willing to testify on his behalf. There was no evidence that a subpoena would not have secured the presence of witness Lashanna to testify. Further, the PCRA court was not given the opportunity to credit the testimony of Lashanna since no effort was made by counsel to obtain her full name, address and telephone number or to have her subpoenaed for court.

Appellant's Brief 12-13.

Although Appellant does not make the claim in his appellate brief, within his *pro se* PCRA petition, he asserted that trial counsel should have called his girlfriend as an alibi witness. The PCRA court addressed this claim,

concluding that Appellant failed to meet his burden under **Thomas**, **supra**. The PCRA court explained: "Here, Appellant did not plead or demonstrate that the witness existed or was available and prepared to cooperate and testify on his behalf. Indeed, PCRA counsel indicated that the witness, who was not identified, was not willing to testify on Appellant's behalf." PCRA Court Opinion, 10/31/12, at 9.

The record supports the PCRA court's conclusion that Appellant failed to establish his claim of ineffectiveness. Appellant's *pro se* PCRA petition did not include an affidavit or certification, or even identify a witness. **See generally**, Pa.R.Crim.P. 902(A)(15). While Appellant now identifies the witness to which he referred in his petition as his girlfriend, Lashanna, and claims that she could have been subpoenaed, Appellant fails to establish that the absence of her testimony "was so prejudicial as to have denied [him] a fair trial." **Thomas**, **supra**. Indeed, while within his brief Appellant makes the bare assertion that had Lashanna testified, "there is a reasonable probability that the outcome of the proceedings would have been different[,]" Appellant's Brief at 13, he does not articulate the content of her proposed testimony.

"Generally, an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party … At the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi." **Commonwealth v. Ali**, 10

- 8 -

A.3d 282, 316 (Pa. 2010) (citation omitted). Appellant utterly fails to explain how, given his own testimony at trial, Lashanna's testimony would have aided his defense. Thus, this claim of ineffectiveness fails. *Loner*, *supra*.

Appellant's entire argument supporting his claim of ineffectiveness involving an alleged picture of an individual withdrawing money from an ATM is as follows:

> [A]n important part of the case against [Appellant] was the assertion by the Commonwealth that he used the MAC machine to make withdrawals from the bank account of [the victim]. Appellant sought relief because a picture from video surveillance of an individual making a withdrawal from an ATM machine could not be identified as [him]. [PCRA counsel's] "no merit" letter claims that the fact that [Appellant] could not be identified as making ATM withdrawals using the [bank] card of [the victim] was of no moment because the card could have been given to anyone. [Appellant] submits that this conclusion by his PCRA counsel was not sufficient grounds for not pursuing the claim.

Appellant's Brief at 13.

The PCRA court rejected Appellant's contention that "trial counsel was ineffective in failing to use [the] ATM video to prove Appellant's innocence" because Appellant failed "to plead or demonstrate that such a video exists or, moreover, that he is prejudiced by trial counsel's omission." PCRA Court Opinion, 10/31/12, at 10. Again, the record supports the PCRA court's conclusion that Appellant failed to meet his burden of establishing trial counsel's ineffectiveness. Appellant fails to adequately develop his

argument — he does no more than declare that, had trial counsel used the ATM video, the outcome of the proceedings would have been different.

Claims of ineffectiveness cannot be raised in a vacuum. ***Commonwealth v. Thomas***, 783 A.2d 328, 333 (Pa. Super. 2001). "This Court will not consider claims of ineffectiveness without some showing of factual predicate upon which counsel's assistance may be evaluated." ***Id.*** (citation omitted). Here, the Commonwealth never referenced or introduced any documentary evidence of a person withdrawing money from an ATM machine. The record indicates that the ATM at which the victim's debit cards were used was located inside a food business. ***See*** N.T., 4/1/08, at 54-55. As opined by the PCRA court, there is no evidence that such a video exists. Thus, Appellant's claim amounts to no more than a "bare assertion" that provides no basis for a conclusion that counsel was ineffective. ***Id.***

In sum, because Appellant's claims of ineffectiveness are without merit, the PCRA court did not err in denying his petition. ***Loner***, ***supra***. We therefore affirm the PCRA court's order denying relief.

Order affirmed.

Judge Ott joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/26/2014