J-S42001-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM PHILIP BLACK, | |
| Appellant | No. 1504 WDA 2014 |

Appeal from the PCRA Order August 27, 2014
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0000943-2009

BEFORE: SHOGAN, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 19, 2016**

Appellant, William Philip Black, appeals from the order entered on August 27, 2014, denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

A prior panel of this Court provided the following factual background relevant to Appellant's underlying conviction:

> On July 15, 2009, the Commonwealth charged Appellant with criminal homicide and robbery—infliction of serious bodily injury, resulting from the April 20, 2009 murder of William Joseph Pierce (victim), and the theft of victim's wallet and cell phone. (**See** Information, 7/15/09, at 1).
>
> The trial court aptly provided the evidence adduced at trial, as follows:

---

[*] Former Justice specially assigned to the Superior Court.

Evidence presented at trial held February 7 through February 11, 2011, included the testimony of Jamie Douglas of Denbo, Fayette County, who stated that she knew both the victim and Appellant. Ms. Douglas testified that earlier in April 2009, Appellant asked her to use her cell phone to call the victim to see about his money. (*See* N.T., 2/09/11, at 423-24). She knew Appellant actually called the victim because his name came up in her contact list on the phone, Appellant appeared to Ms. Douglas as "pissed", and she overheard him tell the victim that he wanted his money. *(See id.*).

Another witness, Tina Pitcock, testified that she knows Appellant as "Teeni" and thought he was one of her best friends. She told the jury that she also knew the victim, . . . and had been with him at Appellant's house. On the day of the crime, April 20, 2009, Appellant borrowed her car, a Mustang, from about 7:00 P.M. until he returned it at about 8:17 P.M., when she then gave him a ride to the home of his cousin Brandi. (*See* N.T., 2/08/11, at 187-94). When she allowed Appellant to use her vehicle, Ms. Pitcock knew he was trying to collect money from the victim. (*See id.*). An hour or two after dropping Appellant off at Brandi's residence, Ms. Pitcock went back to Brandi's house to borrow either cigarettes or money to buy some. While there, she saw Appellant for the last time.

Commonwealth witness April Krushak told the jury that she knows Appellant and was talking to him at approximately 7:30 P.M. on April 20, 2009, on her front porch when they saw the victim drive by. (*See id.* at 212). Appellant immediately left the porch and tried to get the victim to stop his car. (*See id.* at 215). When the victim just kept going, Appellant got into [a] silver-colored Mustang and drove off in the same direction that the victim had been going. (*See id.* at 217). Ms. Krushak also testified that a few weeks before the day of the murder, she had been involved in a telephone call with Appellant, during which he said he wanted to get in touch with the victim to "fuck him up" because the victim allegedly

- 2 -

owed him money. (*See id.* at 219). When Ms. Krushak saw Appellant on the day of the crime, Appellant was wearing a black hooded sweatshirt and jeans. When she last saw the victim driving away in his green car and Appellant driving after him in the silver Mustang, both men were heading toward Brownsville, Fayette County. (*See id.*). She heard the next day that somebody had been shot in Brownsville. (*See id.*).

At some point later in the evening of April 20th, Appellant arrived alone at the residence of Brandi Brooks, his cousin, on Water Street in Brownsville. He stayed there for a couple of hours and left at about 2:00 A.M. the following morning (April 21st). (*See* N.T., 2/07/11, at 62-66). A couple of days later Appellant called Ms. Brooks to tell her to make sure everything was cleaned up in her house. He also told her to throw her three garbage bags in a dumpster located in one of the housing projects some distance away. (*See id.* at 68-70). Appellant told his cousin that she needed to get rid of her garbage because of the drug paraphernalia in it, and offered to babysit her children so she could drive the garbage bags to the project dumpster. Ms. Brooks removed the garbage contained in the three black plastic bags from her residence, but put it into the trash can right outside instead of removing it to a dumpster as Appellant had instructed. (*See id.* at 72). On April 24, 2009, Trooper Beverly Ashton went to Brandi Brooks' residence and obtained her consent to take the three garbage bags from her trash can. (*See id.* at 88-89). Trooper Ashton then drove the bags to the state police barracks and searched them, eventually finding therein the victim's cell phone and his wallet which had within it his driver's license. (*See id.* at 89-90).

Pennsylvania State Police Trooper Christian Lieberum, the lead investigator on this case, questioned Appellant as to his whereabouts on April 20, 2009, and the answers Appellant provided differed in germane and relevant details from the statements given by the other witnesses. (*See* N.T.,

2/09/11, at 450-53). Trooper Lieberum then obtained a search warrant for Appellant's Brownsville residence, pursuant to which he found a dark grey hooded sweatshirt, which he confiscated. Said sweatshirt was later determined to belong to the victim. (*See id.* at 467-68). On April 28, 2009, the trooper served a search warrant on Appellant so as to take his palm prints and a bucchal swab. Trooper Lieberum asked no questions during the execution of the search warrant, but when Appellant asked him how the investigation was going, the officer told him he was in custody for the crime and he was getting the credit for it. Appellant then replied that you don't get any credit for wasting a basehead. (*See* N.T., 2/07/11, at 46-61).

Alfred J. Schwoeble, a forensic technical advisor with the R.J.Lee Group, an analytical laboratory, testifying as an expert in gunshot residue analysis, told the jurors that one particle consistent with gunshot residue was found on the steering wheel of the silver Mustang. (*See* N.T., 2/08/11, at 168, 170). More particles consistent with gunshot residue were found on the grey sweat shirt belonging to the victim as well as on his wallet. (*See id.* at 171-72, 175-76).

(Trial Court Opinion, 4/21/11, at 1-4 (some record citations omitted; record citation format provided)).

*Commonwealth v. Black*, 108 WDA 2012, 53 A.3d 923 (Pa. Super. filed June 1, 2012) (unpublished memorandum at pages 1-4) (internal footnote omitted). On February 11, 2011, a jury convicted Appellant of second-degree murder, and the trial court sentenced him to a term of life in prison. This Court affirmed Appellant's judgment of sentence on June 1, 2012. *Id*. Appellant's petition for allowance of appeal in the Pennsylvania Supreme

Court was denied on March 1, 2013. ***Commonwealth v. Black***, 63 A.3d 1242 (Pa. 2013).

Appellant filed a timely *pro se* PCRA petition on November 4, 2013, and the PCRA court appointed counsel. An amended PCRA petition was filed on April 1, 2014. The PCRA court held hearings on Appellant's petition, and in an order filed on August 27, 2014, the PCRA court denied Appellant relief. This timely appeal followed. Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.[1]

On appeal, Appellant raises the following issues for this Court's consideration:

> 1. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO CROSS EXAMINE THE FORENSIC GUNSHOT EXPERT?
>
> 2. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILINT [sic] TO OBJECT TO THE INTRODUCTION OF THE EVIDENCE OF THE SWEATSHIRT WHICH WAS THE VICTIM'S AND NOT THE APPELLANT'S?
>
> 3. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO REQUEST THE IDENTIFICATION OF THE CONFIDENTIAL INFORMANT WHOSE TIP LED TO THE SEARCH OF THE TRASH?
>
> 4. WAS TRIAL COUNSEL INEFFECTIVE FOR FAILING TO INTERVIEW OR CALL TO TESTIFY THE ALIBI WITNESS WHO WOULD HAVE TESTIFED [sic] THAT THE APPELLANT WAS WITH HIM DURING THE PERIOD THAT THE SHOOTING OCCURRED?

---

[1] It appears that the delay in disposing of this appeal was due to the PCRA court's failure to forward the record to this Court. The Superior Court docket entries reflect that on December 17, 2014, this Court's Prothonotary sent notice to the PCRA court that the record was delinquent. The record was received in Superior Court on January 15, 2016.

5. WAS IT PROSECUTORIAL MISCONDUCT FOR THE COMMONWEALTH TO INTRODUCE THE SWEATSHIRT OF THE VICTIM AS EVIDENCE, CAUSING THE JURY TO CONFUSE THE ITEM WITH ONE TAKEN FROM THE RESIDENCE OF THE APPELLANT?

Appellant's Brief at 5.[2]

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. **Commonwealth v. Phillips**, 31 A.3d 317, 319 (Pa. Super. 2011) (citing **Commonwealth v. Berry**, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Id**. (citing **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

In Appellant's first four issues, he raises claims of ineffective assistance of counsel. When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) Appellant was prejudiced by counsel's action or omission. **Commonwealth v. Pierce**, 527 A.2d 973, 975-976 (Pa.

_____

[2] For purposes of our discussion, we have renumbered Appellant's issues on appeal.

1987). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. *Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004). "The burden of proving ineffectiveness rests with Appellant." *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007).

In his first two issues, Appellant avers that trial counsel was ineffective for failing to cross-examine Alfred Schwoebel, the forensic gunshot expert ("the expert"). Appellant asserts that while the gunshot residue expert testified that residue was found on the victim's sweatshirt and the steering wheel of the car Appellant drove, no residue was found on Appellant's shirt. Appellant's Brief at 7. The crux of Appellant's argument in issues one and two is that, in Appellant's opinion, it was not clear whether the jury believed the gunshot residue was from the victim's sweatshirt or Appellant's sweatshirt. *Id*. at 9.

The record reveals that at trial, the Commonwealth questioned the gunshot-residue expert about the steering wheel and a sweatshirt. N.T., 2/7-11/11, at 168, 170. While the Commonwealth on direct examination did not reiterate that the sweatshirt belonged to the victim, and while counsel

- 7 -

for Appellant did not cross examine the witness regarding ownership of the sweatshirt, we do not conclude that Appellant has established ineffective assistance of counsel. Appellant merely asserts that ownership of the sweatshirt was not clear. Appellant's Brief at 9.

At the PCRA hearing, Attorney Michael Garofalo, Appellant's trial counsel who cross-examined the expert, testified that he "didn't even address the sweat shirt, because it was the victim's sweat shirt that had been discussed." N.T., 6/25/14, at 43. Attorney Garofalo stated that he focused on the Commonwealth's attempt to introduce new evidence that had not been inventoried, the victim's wallet, and the steering wheel of the car Appellant drove. *Id*. Counsel's rationale for focusing the jury's attention on the steering wheel was that if Appellant drove that car "you would think that the steering wheel would be covered [with residue] if [Appellant] had fired [a] gun with his bare hands and then drove away." *Id*. at 44. There was, however, "minimal amounts" of residue on the steering wheel. *Id*. Thus, counsel was aware that the sweatshirt did not belong to Appellant and concluded there was no need to address that item further. Rather, as a matter of strategy, counsel opted to focus on the minimal amount of gun shot residue recovered from the car.

After review, we conclude that despite Appellant's opinion on this matter, he has failed to establish how he was prejudiced. In other words, Appellant has failed to establish that, if counsel had cross examined the

expert as to ownership of the shirt, the result of the trial would have been different. ***Reed***, 42 A.3d at 319. Moreover, while counsel for Appellant did not specifically ask the expert about ownership of the sweatshirt, the notes of testimony reveal that the sweatshirt, which was marked as Commonwealth Exhibit 12, was repeatedly identified as the victim's shirt and admitted into evidence. N.T., 2/7-11/11, at 170, 292, 295, 467-468, and 481. For these reasons, Appellant's first two issues are meritless.

Next, Appellant argues that trial counsel was ineffective for failing to request the identification of the confidential informant who led police to search Brandi Brook's garbage where the victim's wallet and phone were discovered. A review of Appellant's Brief, however, reveals that he abandoned this issue on appeal as there is no argument on this issue in his brief. Therefore, it is waived. ***See Commonwealth v. Puksar***, 951 A.2d 267, 293-294 (Pa. 2008) (deeming a claim waived where the appellant failed to make or develop an argument).

In his fourth issue, Appellant alleges that trial counsel was ineffective for failing to interview or call to testify an alibi witness. We disagree.

In order to establish that counsel was ineffective for failing to call an alibi witness, the defendant must prove: the witness existed and was available; counsel was aware of or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary to avoid prejudice to defendant. ***Commonwealth v. Thomas***,

44 A.3d 12, 17 (Pa. 2012) (citing **Commonwealth v. Morris**, 684 A.2d 1037, 1044 (Pa. 1996)).

The PCRA court addressed this issue as follows:

[Appellant assails] the failure of trial counsel to call Alexander R. Thompson as an alibi witness on [Appellant's] behalf during the trial. At [PCRA] hearing on this matter, Mr. Thompson testified that he met [Appellant] for the first time on the evening of the homicide when [Appellant] came to the residence of Brandi Brooks, Mr. Thompson's girlfriend, when he was babysitting her children while she went to bingo. PCRA Proceedings, July 15, 2014, p.7. At some time after the homicide, Trooper Lieberum talked to Mr. Thompson, and Mr. Thompson subsequently provided a written statement to the police. Id. p. 6. In the statement dated April 20, 2011, Mr. Thompson said that he was standing on the porch as Ms. Brooks was leaving for bingo around 6:30 or 6:45 P.M. when [Appellant] strolled onto the premises, stating his intention to play video games on the game consol[e] in Ms. Brooks' home. Id. p. 9; See also Mr. Thompson's pretrial statement. Under cross-examination at the hearing, Mr. Thompson conceded the possibility that Ms. Brooks left the house late that evening, as she herself testified at trial, but the bingo itself started at 7:00 P.M. Id. p. 8. He further testified that he cannot remember anyone from the Fayette County Public Defender's office calling him or contacting him. Id. p. 6. The only person he could remember talking to about [Appellant's] presence in his residence on the evening of the killing was Trooper Lieberum. Id. p.12.

Mr. Thompson's testimony at the PCRA hearing is contradicted by other testimony elicited at that proceeding. Attorney Susan Ritz Harper of the Public Defender's office, one of Petitioner's trial attorneys, testified that she was aware of Mr. Thompson's statement and spoke to [Appellant] about it before the trial. PCRA Proceedings Part One, June 25, 2014, p. 21. She absolutely denied that [Appellant] ever told her that he wanted Mr. Thompson to be called as a witness, pointing out that he was Ms. Brooks' boyfriend, and she was testifying for the Commonwealth. Id. p. 32. Likewise, trial co-counsel, Michael Garofalo, did not remember [Appellant] ever saying that he wanted Alexander Thompson called to testify. Id. p. 41. In

- 10 -

addition, Mr. Thompson's written statement relative to the time of [Appellant's] arrival at Ms. Brooks' house was an estimated time and, as Attorney Harper stated, was contradicted by Ms. Brooks, who testified at trial that she was late for bingo and missed the early bird game, which, as Attorney Harper went on to say, put her arriving at the bingo after 6:45 or even 7:00 P.M. Id. p. 32. Most importantly, [Appellant] himself had said that he never left his mother's house where he had been prior to arrival at the Brooks house until after 7:00 P.M., and he walked from one residence to the other. Id. Attorney Harper further said that Mr. Thompson's statement also placed [Appellant] in the kitchen of the Brooks house, where the garbage can was kept, which meant that he could have put something in it. Id. pp. 33-34. That garbage can was later placed outside and subsequently searched, and the victim's wallet and cell phone were found therein. Id. Part of the defensive argument during the trial was that the garbage can was outside, and anyone could have put those incriminating items in it. Id. p. 34. The Court finds this issue of the alleged failure to call Alexander Thompson as an alibi witness at trial to be without merit in that defense counsel considered doing so, but had very good strategic reasons for deciding not to.

PCRA Court Opinion, 8/27/14, at 5-7.

We agree with the PCRA court. We cannot conclude that counsel was ineffective for failing to call Mr. Thompson as a witness and elicit testimony from an individual who could directly connect Appellant to the garbage can where the victim's wallet and phone were found. Thus, Mr. Thompson's testimony would not have prevented prejudice; rather, it would have caused prejudice to Appellant. **Thomas**, 44 A.3d at 17. Accordingly, Appellant is due no relief on this issue.

Finally, Appellant avers that the Commonwealth committed prosecutorial misconduct when it introduced the victim's sweatshirt because it caused the jury to confuse the item with one belonging to Appellant.

- 11 -

Appellant's Brief at 13. Appellant baldly claims that the attorneys for the Commonwealth intentionally mislead the jury regarding ownership of the shirt. *Id*. 14. We are constrained to point out that an allegation of prosecutorial misconduct is not cognizable as an independent basis for relief under the PCRA.[3] *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1138 (Pa. 2012); 42 Pa.C.S. § 9543(a)(2). Moreover, Appellant could have raised this issue on direct appeal but failed to do so; therefore, the issue is also waived. 42 Pa.C.S. § 9543(a)(3); 42 Pa.C.S. § 9544(b).[4]

For the reasons set forth above, we discern no error of law or abuse of discretion in the PCRA court's decision. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2016

_____

[3] Were this issue cognizable, we would conclude it is meritless. As noted above, the sweatshirt was properly referred to and identified as belonging to the victim, and we would conclude that there is no support for Appellant's accusation.

[4] "[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).