J-S54019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DANIEL ANTHONY KLOSS | |
| Appellant | No. 1745 WDA 2015 |

Appeal from the PCRA Order October 13, 2015
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-CR-0000322-2014

BEFORE: BENDER, P.J.E., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.: **FILED SEPTEMBER 19, 2016**

Daniel Anthony Kloss appeals from the order entered October 13, 2015, denying his first petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9545. Kloss seeks relief from the judgment of sentence of a term of 42 months to nine years' imprisonment, imposed following his guilty plea to one count of possession with intent to deliver controlled substances ("PWID"). *See* 35 P.S. § 780-113(a)(30). On appeal, he challenges the ineffective assistance of plea counsel. For the reasons below, we affirm.

The facts and procedural history underlying this appeal are as follows. On January 22, 2014, the McKean County Drug Task Force, working with a confidential informant, set up a controlled purchase of Dilaudid and morphine tablets from Kloss in exchange for $1,550.00. *See* Guilty Plea

Agreement, 6/27/2014, at 3. Following the exchange, Kloss was arrested and charged with PWID, possession of controlled substances, and criminal use of a communication facility.[1] Thereafter, on June 27, 2014, Kloss entered a guilty plea to one count of PWID. In exchange for the plea, the Commonwealth agreed that Kloss's sentence would be "no more than" a term of 42 months' to nine years' imprisonment. Guilty Plea Agreement, 6/27/2014, at 1. On September 22, 2014, the trial court imposed a standard range sentence of 42 months' to 9 years' imprisonment, and indicated Kloss was RRRI[2] eligible after serving 31½ months' imprisonment. No direct appeal was filed. Thereafter, on November 13, 2014, the trial court amended its prior sentencing order to reflect that Kloss was not RRRI eligible until he served 35 months' imprisonment.[3]

---

[1] **See** 35 P.S. §§ 780-113(a)(30) and (a)(16), and 18 Pa.C.S. § 7512(a), respectively.

[2] Recidivism Risk Reduction Incentive, 61 Pa.C.S. §§ 4501-4512.

[3] Although Kloss challenged the belated modification of his sentence in his PCRA petition, he has not repeated that challenge on appeal. Nevertheless, we note the original sentence contained a clerical error. **See** N.T., 10/12/2015, at 72; 61 Pa.C.S. § 4505(c)(2) (mandating that, to be eligible for RRRI, a defendant must serve five-sixths of his minimum sentence when that sentence is greater than three years). Therefore, the court had the authority to correct the sentence outside of the usual 30-day time limitation. **See** 42 Pa.C.S. § 5505; **Commonwealth v. Walters**, 814 A.2d 253, 256 (Pa. Super. 2002) (noting trial court has the power to correct "patent and obvious" mistakes after 30-day appeal period), *appeal denied*, 831 A.2d 599 (Pa. 2003).

On December 5, 2014, Kloss filed a timely *pro se* PCRA petition. Although the PCRA court appointed counsel, Kloss later retained Robert E. Draudt, Esq., to litigate his PCRA claims. On September 8, 2015, counsel filed an amended petition, asserting the ineffectiveness of plea counsel. At the conclusion of an evidentiary hearing on October 12, 2015, the PCRA court denied Kloss's petition. This timely appeal followed.[4]

On appeal, Kloss argues the PCRA court erred when it denied his request for relief based upon plea counsel's ineffectiveness. Specifically, Kloss contends plea counsel failed to: (1) file a pretrial motion to suppress both a statement he gave to police and evidence retrieved during a search of his car; (2) contact potential witnesses; (3) meet with Kloss and adequately prepare for trial; and (4) inform Kloss of his post-sentence rights. Kloss also asserts counsel induced him to enter an unknowing plea based on counsel's assurance that he would be sentenced to a term of home confinement. *See* Kloss's Brief at 6.

When reviewing an order dismissing a PCRA petition, we must determine whether the PCRA court's findings of fact are supported by the record, and whether its legal conclusions are free from error.

---

[4] On November 10, 2015, the PCRA court directed Kloss to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After recieving an extension of time, Kloss complied with the court's directive and filed a concise statement on January 6, 2016.

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "Great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record." ***Commonwealth v. Carter***, 21 A.3d 680, 682 (Pa. Super. 2011) (citation omitted). Moreover, "[t]he PCRA court's credibility determinations, when supported by the record, are binding on this Court." ***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011).

Where, as here, the petitioner alleges the ineffectiveness of prior counsel in conjunction with a guilty plea, our review is as follows:

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e. there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different.
>
> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, [a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
> ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (citations, quotation, and quotation marks omitted). "[T]he law does not require that [the defendant] be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that [his] decision to plead guilty be knowingly,

- 4 -

voluntarily, and intelligently made." [*Commonwealth v.*] *Anderson*, 995 A.2d [1184,] 1192 [Pa. Super. 2010] (citations, quotation, and quotation marks omitted).

*Commonwealth v. Willis*, 68 A.3d 997, 1001-1002 (Pa. Super. 2013).

When considering the voluntariness of a defendant's guilty plea,

[t]he longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that [she] lied while under oath, even if [she] avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements [she] makes in open court while under oath and [she] may not later assert grounds for withdrawing the plea which contradict the statements [she] made at [her] plea colloquy.

*Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003). *See also Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011).

Upon our review of the certified record, the PCRA hearing transcript, the parties' briefs, and the applicable case law, we find the PCRA court thoroughly addressed and properly disposed of Kloss's claims on appeal in its opinion. *See* PCRA Court Opinion, 2/8/2016, at 2-9 (finding (1) plea counsel credibly explained that she did not file a pretrial suppression motion because Kloss signed both a *Miranda*[5] waiver and a consent to search his vehicle, and Kloss's claim that the forms were signed after the police questioned him and searched his car "just doesn't make sense[;]" (2) Kloss failed to demonstrate how the absent witnesses' testimony would have been beneficial to his defense; (3) counsel had a sufficient number of contacts

_____

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

- 5 -

with Kloss, based on counsel's credible testimony "that she had met several times with [Kloss] in person and had exchanged emails, letters and telephone calls with [him];" (4) Kloss's written and oral plea colloquies demonstrated his plea was knowingly and voluntarily entered; and (5) the court informed Kloss of his post-sentence rights during the sentencing hearing). Accordingly, we adopt the PCRA court's opinion as dispositive.

Because Kloss has failed to demonstrate that plea counsel was ineffective, or that he is otherwise entitled to post-conviction relief, we affirm the order of the PCRA court.[6]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn, Esq._
Joseph D. Seletyn, Esq.
Prothonotary

DATE: 9/19/2016

---

[6] We note the certified record does not include the transcripts from either Kloss's guilty plea hearing or his sentencing hearing. Moreover, upon our inquiry regarding the missing testimony, we were informed by the trial court that PCRA counsel ordered only the transcription of the PCRA hearing testimony. Therefore, to the extent any of Kloss's claims are dependent upon the other transcripts, they are waived. It is well-established that it is the appellant's obligation to "identify and order" those transcripts necessary to prosecute his appeal. ***Commonwealth v. Lesko***, 15 A.3d 345, 410 (Pa. 2011).

COMMONWEALTH OF PENNSYLVANIA     IN THE COURT OF COMMON PLEAS OF

vs.     McKEAN COUNTY, PENNSYLVANIA

DANIEL A. KLOSS,     CRIMINAL DIVISION

    Defendant.     322 CR 2014

---

Dated: February _8_, 2016

## RULE 1925(a) STATEMENT

The Defendant-Petitioner was sentenced on September 22, 2014 for forty-two months to

not more than nine years at Count 1 for Violation of the Controlled Substance, Drug Device, and

Cosmetic Act. The Appellant did not seek a direct appeal of this sentence. Petitioner filed a

timely Petition for Post-Collateral Relief ("PCRA") on December 5, 2014. The Petitioner

appeals from the Court's Order dated October 12, 2015 in which the Court dismissed the

Petitioner's PCRA. The Defendant filed his Notice of Appeal on November 2, 2015, and said

Notice was followed by the filing of a concise statement of matters complained of on appeal

pursuant to Pa. R.A.P. 1925(b) on January 11, 2016 after an extension. This opinion is written

pursuant to Pa. R.A.P. 1925(a).

The Petitioner raises the following issues in his 1925(a) Statement: 1) Trial counsel for

the Petitioner failed to file a Motion to Suppress Evidence; 2) Trial counsel failed to contact

potential witnesses; 3) Trial counsel failed to meet with the Petitioner; 4) Petitioner's plea was

unlawfully induced and not voluntarily and understandably made; 5) Petitioner was never told of

his post-sentence rights by his attorney; and, 6) the court erred when it denied Petitioner's

request for PCRA relief and Petitioner was unconstitutionally deprived of his right to counsel

due to ineffectiveness.

## Discussion:

### 1) Trial counsel for the Petitioner failed to file a Motion to Suppress Evidence

Petitioner alleges that his trial counsel failed to file a Motion to Suppress Evidence in this matter. In Commonwealth v. Arch, 654 A.2d 1141, 1143 (Pa. Super. 1995), the Superior Court states, "[w]here the ineffectiveness claim is based on the failure of counsel to move for suppression of evidence, 'the defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable.'"; *Citing* Commonwealth v. Melson, 556 A.2d 836, 839 (Pa. Super. 1989). At the PCRA hearing, the Petitioner's former attorney, Qiana Lehman, testified:

Q And going forward with Mr. Kloss, did you consider filing an omnibus pretrial motion in this case?

A Yes.

Q And why did you not do so?

A Well, he has a Miranda waiver in his file, in his discovery and there was a consent to search his vehicle. After discussing him what happened on that day, it didn't seem to me that there was any discrepancies, either in the paperwork or in what had happened, given the facts of the case. If I thought that anything was illegally searched, or even had the hint of an illegal search, I -- I would have done that. At that point, after reviewing everything, I didn't think it was feasible. It'd be more money for him, obviously, more time. But I wouldn't think, in any event, that it would be -- and we discussed it. We talked about it. His strategy, at that point, was to try to get a IPP, given his medical condition.

PCRA Hearing, October, 12 2015, Page 11, Line 22 through Page 12, Line 10. Attorney Lehman then spoke about what she talked to the Petitioner about regarding suppression:

Q And you said that you had discussed with him suppression --

A Uh-huh (affirmative).

Q -- with regards to the Miranda Warnings --

2

A   Uh-huh (affirmative).

Q   -- with his -- in regards to his statement and also him giving permission for a search of his vehicle? Okay. And let's -- so let's look at the Miranda Warnings. Do you recall when those were given?

A   I don't. I recall that the discovery included the Miranda waiver. It also -- and -- and it also had a consent to search the car.

Q   Was that a written consent?

A   Yes, it was a written consent. And I made sure that they were completed. I discussed them with Mr. Kloss. He did not ask for an attorney during that time period, as far as he told me. And I said any statements that you made, you know, the evidence was there, besides the statement so we really were -- were looking at the fruit of an illegal search type of suppression. And I could not find a basis to file one. If I could have even smelled one I would have tried.

PCRA Hearing, October, 12 2015, Page 18, Line 22 through Page 19, Line 18. The Petitioner's former counsel did not believe that a suppression motion was warranted as the Petitioner signed a written consent as to a Miranda waiver.

## 2) Trial counsel failed to contact potential witnesses

In order to establish that counsel was ineffective for failing to call a particular witness, an appellant must establish that the failure to call the witness denied the appellant a fair trial because of the absence of the testimony. Commonwealth v. Johnson, 966 A.2d 523, 536 (Pa. 2009). "Moreover, Appellant must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case." Commonwealth v. Gibson, 951 A.2d 1110, 1134 (Pa. 2008). The Petitioner has only shown that he had spoken to two DEA agents when his doctor's office was being raided in Cleveland, Ohio. Attorney Lehman testified:

Q   Okay. And relating to a couple things that were raised by the Petitioner. Did you examine any claims about him contacting the DEA?

A   He had told me that he contacted a DEA agent on Cleveland, and I was never given a name so I can't remember who I called, because it was a long time ago. And I checked my -- my notes to see if I had a note who I called, and I couldn't recall who I called.

3

But I did make a call and asked if they were working with anyone named Daniel Kloss, and they didn't know who it was.

PCRA Hearing, October, 12 2015, Page 11, Line 3 through Line 12. The Petitioner did not establish that the failure to contact or call witnesses denied him a fair trial and that the DEA agents' testimony would have been beneficial under the circumstances of the case.

### 3) Trial counsel failed to meet with the Petitioner

Petitioner alleges that Attorney Lehman failed to meet with the Petitioner. Attorney Lehman testified about how many times she met with the Petitioner:

Q Ms. Lehman, how many times did you meet with the Defendant, actually meet him?

A Physically in person?

Q Yes.

A I'd say maybe four times. Maybe twice in my office and twice here in court.

Q The times in your office -- when you say twice here in court, well, let's -- let me rephrase, Your Honor. You say maybe twice in your office?

A Uh-huh (affirmative).

Q Could it have been once in your office?

A I would think -- I'm pretty sure it was twice. But could it have been? Is there a possibility? Absolutely there's a possibility. But I believe it was more -- it was two.

Q Do you have your schedule book with you? Can you check this?

A No. I do have a reading of a bunch of different times that we spoke on the phone and things like that, but it's not a complete list, it was done for billing purposes.

Q I see. All right. So it could have been once, but probably twice in your office, you believe. And then you said -- and then maybe twice here at court?

A In person, yes. Just those times.

Q Okay. And so in -- at court that would have been once for the plea and once for the sentencing?

4

A Yes, sir.

Q Now was Mr. Kloss in jail or was he out on bail at the -- during this period of time?

A He was out.

Q Out on bail? Okay. And you stated that you guys lived far apart and –

A He's from -- yeah, he's from Camp Hill and my office is in Wilkes-Barre.

Q Okay.

A So we did the -- 90 to 95 percent of our communication through email, letters and telephone calls.

PCRA Hearing, October, 12 2015, Page 17, Line 7 through Page 18, Line 18. In Commonwealth v. Johnson, 51 A.3d 237, 244 (Pa. Super. 2012), the Pennsylvania Super Court reasoned, "[w]hile we acknowledge that more contact may have been advisable, we disagree with Appellant that the length and frequency of the consultations alone can support a finding of ineffectiveness. We further decline to read *Brooks* so rigidly that we are precluded from evaluating the substantive impact of the consultations Attorney Gallagher did perform. As the PCRA Court noted, Attorney Gallagher's contact with Appellant allowed him to present a cogent trial strategy." Johnson, 51 at 244. Similar to Johnson, the court found the testimony of Attorney Lehman credible that she had met several times with the Petitioner in person and had exchanged emails, letters, and telephone calls with the Petitioner. Looking at what Attorney Lehman did perform is important when the court evaluates any claim of ineffective assistance of counsel and the court found that Attorney Lehman met with the Petitioner a sufficient number of times.

5

## 4) Petitioner's plea was unlawfully induced and not voluntarily and understandably made

Petitioner alleges that his plea was unlawfully induced and not voluntarily and understandably made. Commonwealth's Exhibit B is a copy of the Petitioner's Written Guilty Plea Colloquy and at the bottom of each page of the colloquy, the Petitioner initialed it "D.A.K." Specifically, question #32 states, "Are you entering the plea of guilty of your own free will?" and the Petitioner answered in the affirmative. Attorney Lehman testified about the Written Guilty Plea Colloquy:

> Q And when did you go through this document with Mr. Kloss?
>
> A Just prior to his guilty plea.
>
> Q And you went through all of these numbered statements with him?
>
> A Yeah. As you could see, he filled out all of them himself. And he answered yes to each one. I went over all of them with him. I asked him he had any questions. He didn't. He did ask me -- I know prior to the guilty plea we did discuss when -- if you could withdraw his plea and what would happen if he plea -- regard -- these are my specific remembrances. What -- could he withdraw his plea and what would happen if he pled regarding his appeal rights. So I made certain to tell him that once you plea, your appeal rights are much -- much more constrained than they are if you have a trial. And that they're basically --does the judge have jurisdiction and was the sentence illegal. So we discussed that before the plea. And then we went over the rest of these items and the paper was given to the judge and went over with in front of the judge at the time of the plea.

PCRA Hearing, October 12, 2015, Page 14, Line 9 through Page 15, Line 4. After the court was presented with the written guilty plea, the court then gave a colloquy with the Defendant on the record. The Defendant knowingly and voluntarily entered into the plea agreement.

6

## 5) Petitioner was never told of his post-sentence rights by his attorney

The Petitioner alleges that Attorney Lehman never told him about this post-sentence rights. At the PCRA hearing, Attorney Lehman testified about the Petitioner's post-sentence rights:

> A  After sentencing I explained his post-sentence rights to him right here, outside this courtroom, in that little area where the stairwell is, there's like a little landing at the top. Sheriffs took him in there with me and we talked about, you know, his ten days for right of reconsideration, 30 days for appeal. And he was concerned about his – getting his book. He had a leather bound book in his car to somebody getting his car, it was a rental car that he had, returning that, so we discussed those things as well.
>
> Q  And I'm sorry, I just want to reiterate, what did you tell him with his right to appeal his sentence --
>
> A  Thirty days.
>
> Q   -- was that also -- okay.
>
> A   He has a right to appeal in 30 days, right to reconsideration in ten.

PCRA Hearing, October 12, 2015, Page 16, Line 10 through Line 25.  The court at Sentencing reiterated to the Defendant his post-sentence rights.  The Defendant acknowledged that he understood his post-sentence rights on the record.

## 6) The court erred in denying Petitioner's request for PCRA relief

The Post Conviction Relief Act provides the only means for a person convicted of a crime in Pennsylvania to obtain collateral relief in state courts.  42 Pa. C.S.A. §9542.  To be eligible for post conviction relief, a defendant must plead and prove by a preponderance of the evidence his conviction or sentence arose from one or more of the following:

(1) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;

7

(2) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place;

(3) A plea of guilty unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent;

(4) The improper obstruction by government officials of the petitioner's right of appeal where a meritorious appealable issue existed and was properly preserved in the trial court;

(5) The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced;

(6) The imposition of a sentence greater than the lawful maximum; and

(7) A proceeding in a tribunal without jurisdiction.

42 Pa. C.S.A. § 9543(a)(2).

To be entitled to postconviction relief, defendant must prove by a preponderance of the evidence his conviction or sentence resulted from one or more of the errors enumerated in the Post Conviction Relief Act, his claims have not been previously litigated or waived, and failing to litigate the issue was not the result of any rational, strategic, or tactical decision by counsel. Commonwealth v. Thomas, 44 A.3d 12, 16 (Pa. 2012). Moreover, great deference is granted to the findings of the PCRA court, and these findings will not be disturbed unless they have no support in the certified record. Commonwealth v. Wilson, 824 A.2d 331, 333 (Pa. Super. 2003).

The Petitioner did not prove by a preponderance of the evidence that either his conviction or sentence arose from any of the above sections of 42 Pa.C.S.A. § 9543(a)(2) as explained in Paragraphs 1 through 5. The court stated its reasons for denying the Petitioner's PCRA on the record:

> THE COURT: Okay. Well, the Court has heard the testimony and of course seen the exhibits, seen the – heard the testimony of the Defendant. And the testimony of the Defendant really is in contradiction to what the written exhibits show. First of all, he had a written guilty plea colloquy, he wrote, after each sentence, yes, and initialed the pages. And yet he's trying to tell us that he didn't understand what was going on, he didn't understand his post-sentence rights. Well, they're all in here.
> And so he can't very well say that he didn't understand them. Also, the Court always gives the colloquy, which I did at that sentencing and explained his post-sentence rights to him, as I've always done, just as I did this morning on some sentences.

8

As to the consent to search the car, it just doesn't make sense that the police would have searched the car and then asked him to sign a consent. And even despite his problems with his medical condition and some problems with his physical -- or many problems with his physical health and he says there are some mental, too, certainly he would have known, after they already searched the car, he would have refused to sign a consent to search. I mean, what -- he would have said, what do you want me to sign that for, you've already searched it.

Same thing with the Miranda Warning, he signed the Miranda Warning and the Court doesn't find that credible that he made a statement and then signed a Miranda Warning. Also, once he signed the Miranda Warning, if it were later, he could have said, oh, I didn't realize this, I'm -- let me have that, I want to tear it up because I didn't want to give you the statement and I see now I didn't have to. So when I consider his testimony with the written documents, I find that the testimony of his attorney was much more credible. There may not have been a lot of contacts, but in these cases often there aren't, so long as -- we see she wrote a long letter to the DA, we know she was doing her job. She made an effort to do what one might want to do under the circumstances of his health. The main goal being to try and keep him out of the state correctional institution. She worked to get the intermediate punishment.

As far as her judgment on whether or not the Commonwealth had sufficient evidence that he could be proven guilty, that's one of the things the defense attorney has to do. And in light of the statements, in light of the search, in light of the evidence, and she said she did not advise the Defendant to plead until she had seen the discovery, she mentioned that. So she said once she got that then she thought their best recourse was to try and get him a sentence, house arrest preferably, and under intermediate punishment. So there wasn't Ineffective assistance of counsel. She did what she could. It was my decision that she didn't expect, but that she had warned him, and that's in writing too, she had warned him that I wouldn't have to accept that, that she would argue for it, but there was no guarantee what the sentencing judge might do. And so that -- the Court doesn't find any ineffective assistance of counsel.

PCRA Hearing, October 12, 2015, Page 72, Line 14 through Page 74, Line 21. In sum, the court properly denied the Petitioner's PCRA for the reasons stated in this opinion and on the record.

WHEREFORE, based on the foregoing reasons, it is respectfully asserted that the Petitioner is not entitled to relief on appeal.

BY THE COURT:

WILLIAM F. MORGAN, S.J.

CC: DA.
Robert Drault