J-S04037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| STEPHON BENNETT | : | |
| | : | |
| Appellant | : | No. 225 EDA 2016 |

Appeal from the PCRA Order December 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010928-2008,
CP-51-CR-0010987-2008

BEFORE:  SHOGAN, OTT and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED FEBRUARY 01, 2017**

Appellant, Stephon Bennett ("Bennett"), appeals *pro se* from the December 17, 2015, order entered in the Court of Common Pleas of Philadelphia County denying his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without an evidentiary hearing.  After a careful review, we affirm.

Bennett and his two co-defendants, Kenny R.R. Shields ("Shields")[1] and Maurice Lewis ("Lewis"), were tried jointly before a jury in connection

_____

[1] As we noted on direct appeal, Shields is also referred to as "DeShields" in the certified record.

[*] Former Justice specially assigned to the Superior Court.

with the shooting death of Thomas Faison ("the victim").   This Court

previously summarized on direct appeal the facts underlying the murder as

follows:

> On December 6, 2005, Sabrina Clyburn [("Clyburn")] overheard Shields, Lewis, and Bennett discussing robbing [the victim].  Clyburn saw the three [men] outside of the victim's house wearing masks and gloves.  Lewis entered the house alone; sounds of an argument and a gunshot were heard; Shields and then Bennett ran into the house; and a second gunshot went off.
>
> Lewis, who had been shot, was taken by Shields to a nearby apartment building where Shields' cousin lived. Following an emergency call, Lewis was taken to the hospital, claiming that he had been shot getting off of a bus.
>
> A neighbor found the victim dead in his home amidst the scene of a struggle.  The Assistant Medical Examiner testified that the victim sustained one gunshot wound to the chest and one to his hand, that death was caused by the gunshot wound to the chest, and that the manner of death was homicide.
>
> In the following days, Shields and Lewis relayed to various people the story of how Shields saved Lewis' life after Lewis was shot struggling with the victim.  Rasheda DeShields, Shields' sister, gave a statement in which she reported that Shields made statements to her, *inter alia*, that Lewis shot the victim in the hand and that Shields' [*sic*] took Lewis' weapon to hide it at Lewis' grandmother's home before the police arrived in response to the 911 call that led to Lewis' being taken to the hospital. Arlo Spruell gave a statement that Shields told him that Shields and Lewis went to the victim's house to rob the victim because the victim was selling cocaine for someone named Mike, whom Shields and Lewis did not like, and they wanted to get Mike's money and cocaine.
>
> Bennett apparently was more tight-lipped about the events of the evening.  Angered that Clyburn was including his name in her statement to police, Bennett asked his brother to instruct Clyburn "to keep [Bennett's] name out of her mouth because she don't know what she's talking about if she is saying [Bennett] killed [the victim]." N.T., 1/6/2010, at 115.

While the statements to the police were offered into evidence, Shields, Lewis, and Bennett exercised their rights not to testify at trial. On January 12, 2010, the jury found [all three men] guilty of [ ] various crimes.

***Commonwealth v. Bennett***, 1639 EDA 2010, at 3-4 (Pa.Super. filed 12/6/11) (unpublished memorandum).

Specifically, with regard to Bennett, the jury convicted him of second-degree murder, robbery, witness intimidation, criminal solicitation, conspiracy, and possession of an instrument of crime.[2] He was sentenced to an aggregate of life in prison, and following the denial of his post-sentence motion, Bennett appealed to this Court.

On direct appeal, Bennett claimed (1) the evidence was insufficient to support his convictions, (2) the jury's verdicts were against the weight of the evidence, (3) the trial court erred in permitting the testimony of Anthony Sharpe,[3] (4) the prosecutor committed misconduct during closing argument, and (5) the trial court erred in charging the jury with regard to second-degree murder. ***See id.*** at 5. Finding the claims to be meritless and/or waived, we rejected Bennett's claims and affirmed his judgment of sentence. ***See Bennett***, ***supra***. Bennett filed a petition for allowance of appeal, which

---

[2] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 4952(a)(1), 902(a), 903(a)(1), and 907(a), respectively.

[3] Anthony Sharpe gave a pre-trial statement to the police in which he related his knowledge of the victim's murder, and the Commonwealth called him as a witness during its case-in-chief.

- 3 -

our Supreme Court denied on July 2, 2012. Lee Mandell, Esquire, represented Bennett during trial and on direct appeal.

On or about March 21, 2013, Bennett filed a timely, *pro se* PCRA petition, and Barnaby C. Wittels, Esquire, was appointed to represent him. On October 20, 2015, Attorney Wittels filed a **Turner/Finley**[4] "no-merit" letter and petition seeking to withdraw his representation. On November 10, 2015, Bennett filed a response, and on November 17, 2015, the PCRA court provided Bennett with notice of its intent to dismiss his PCRA petition without an evidentiary hearing. By order entered on December 17, 2015, the PCRA court denied Bennett's petition,[5] and this timely appeal followed.[6]

Initially, we note that our standard of review from the denial of post-conviction relief "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa.Super.

---

[4] **Commonwealth v. Turner**, 518 Pa. 491, 544 A.2d 927 (1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

[5] The certified docket entries reveal that, in a separate order filed on December 17, 2015, the PCRA court permitted Attorney Wittels to withdraw his representation.

[6] The PCRA court did not direct Bennett to file a Pa.R.A.P. 1925(b) statement, and thus, Bennett filed no such statement. However, the PCRA court filed an opinion on July 15, 2016, explaining the reasons it denied Bennett's PCRA petition.

2011). This Court "will not disturb findings that are supported by the record." *Id.*

Moreover, to the extent Bennett challenges the effectiveness of counsel, we note that when analyzing ineffectiveness claims, we begin with the presumption that counsel was effective. *Commonwealth v. Spotz*, 610 Pa. 17, 18 A.3d 244, 259–60 (2011). "[T]he [petitioner] bears the burden of proving ineffectiveness." *Commonwealth v. Ligons*, 601 Pa. 103, 124, 971 A.2d 1125, 1137 (2009) (citation omitted). To overcome the presumption of effectiveness, a PCRA petitioner must demonstrate that: "(1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance." *Id.* (citation omitted). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any of these prongs. *See id.*

Bennett first contends trial counsel was ineffective in failing to object properly to the Commonwealth's use of Clyburn's preliminary hearing testimony at trial.[7] Specifically, he argues that, prior to the preliminary

---

[7] Clyburn testified at Bennett's preliminary hearing on September 2, 2008, and after the Commonwealth established she was unavailable, her testimony was subsequently read to the jury during trial. *See* PCRA Court's Opinion, filed 7/15/16, at 10; N.T., 1/5/10, at 125-57. Clyburn testified that, on the day of the shooting, she was walking to a store when she heard Lewis,
*(Footnote Continued Next Page)*

hearing, the Commonwealth failed to disclose to the defense Officers Philip Sprague's and Scott Pollack's written investigation interview records in which they set forth statements made to them by Clyburn.[8] Bennett contends the officers' written investigation interview records contained vital impeachment evidence which should have been available to the defense in order to test Clyburn's veracity at the preliminary hearing. Accordingly, he argues trial counsel should have argued at trial that Bennett did not have a full and fair

_(Footnote Continued)_ ─────────────

Shields, and Bennett discussing robbing the victim. N.T., 1/5/10, at 126-32. Clyburn testified she had known Bennett "[a]ll [her] life." *See id.* at 127. Clyburn indicated she went to the store and, as she was walking back towards the victim's house, she saw all three men, who were now wearing masks and latex gloves, standing outside of the victim's house. *See id.* at 130-32. She saw Lewis enter the house alone, heard an argument, and then heard a gunshot coming from inside of the house. *See id.* She then saw Shields and Bennett run into the house, after which she heard another gunshot. *See id.* 130-33. She further indicated that, after she testified at Lewis' and Shields' preliminary hearings, but before she testified at Bennett's preliminary hearing, Bennett's brother threatened to hurt her if she testified again. *See id.* at 138.

[8] In the officers' investigation interview records, they indicated that they were on duty together on June 10, 2006, and responded to a call for a disturbance at approximately 11:46 p.m. *See* Bennett's Response, filed 11/10/15, Exhibits A-1 and A-2. Upon arrival, Clyburn told them she had been assaulted by at least two males, and during the discussion, Clyburn told them she had information about a murder case. *See id.* Specifically, the officers indicated Clyburn told them she was outside of the victim's house, saw three males go into the house, and heard gunshots. *See id.* She said the males were known to her as "Foo-Foo," "Stephan," and "Dion." *See id.* She indicated "Foo-Foo" was an alias for Shields. *See id.*

Although the officers' written investigation interview records were not provided to defense counsel prior to the preliminary hearing, there is no dispute the records were provided to defense counsel prior to trial. PCRA Court's Opinion, filed 7/15/16, at 14-15.

opportunity to cross-examine Clyburn at the preliminary hearing, thus rendering her preliminary hearing testimony inadmissible at trial under *Commonwealth v. Bazemore*, 531 Pa. 582, 614 A.2d 684 (1992). We find no relief is due on this claim.

Under both the Pennsylvania and United States Constitutions, a criminal defendant has a right to confront and cross-examine the witnesses against him. *Commonwealth v. McCrae*, 574 Pa. 594, 832 A.2d 1026 (2003). Our rules provide, however, that an unavailable witness'[9] prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine the witness at the prior proceeding. *See* Pa.R.E. 804; *Commonwealth v. Mitchell*, 2016 WL 7163810 (Pa.Super. filed 12/8/16). With regard to the "full opportunity to cross-examine the witness at the prior proceeding," our Supreme Court has held that, "[w]hether prior testimony was given at trial or at any other proceeding where, as here, admission of that prior testimony is being sought as substantive evidence against the accused, we conclude that the standard to be applied is that of *full and fair opportunity* to cross-examine." *Bazemore*, 531 Pa. at 587-88, 614 A.2d at 687 (emphasis in original).

---

[9] Bennett specifically argues that he is not challenging the PCRA court's conclusion that Clyburn was unavailable for trial or that trial counsel sufficiently objected to the introduction of Clyburn's preliminary hearing testimony on this basis. *See* Bennett's Brief at 4-5.

In **Bazemore**, our Supreme Court found the appellant's right to confrontation was violated because "he was denied a full and fair opportunity to cross-examine [a witness] at the preliminary hearing so as to preclude the use of that testimony at trial."  **Id.** at 588, 614 A.2d at 687. Specifically, in **Bazemore**, the Supreme Court noted that:

> At the time of the preliminary hearing, defense counsel was not aware that [the witness] had given a prior inconsistent statement to the police nor was she made aware that the Commonwealth was contemplating the filing of criminal homicide, conspiracy and aggravated assault charges against [the witness], which charges arose out of the same incident giving rise to the charges at issue in the hearing. In addition, counsel was unaware of [the witness'] prior criminal record.

**Id.** (emphasis omitted).

Accordingly, our Supreme Court determined that the appellant in **Bazemore** was not given a "full and fair opportunity" to cross-examine the witness at the preliminary hearing due to the Commonwealth's failure to disclose the relevant impeachment evidence prior to the witness' initial testimony.  Thus, the Supreme Court held that "no indicia of reliability" could be attributed to the defense's cross-examination of the witness at the preliminary hearing such that the testimony of the witness, who had become unavailable, could not be used as substantive evidence against the appellant at trial.  **Id.** at 587, 614 A.2d at 687.  **See Commonwealth v. Cruz-Centeno**, 668 A.2d 536, 542-43 (Pa.Super. 1995) ("[W]here the defense, at the time of the preliminary hearing, was denied access to vital impeachment evidence, such as prior inconsistent statements of the witness. . .a full and

fair opportunity to cross-examine the unavailable witness may be deemed to have been lacking at the preliminary hearing.") (citations omitted)). However, as the PCRA court found in the case *sub judice*, the constitutional concerns and implications regarding the use of Clyburn's preliminary hearing testimony illustrated in **Bazemore** are not present in the instant case.

This Court has clarified that "[m]ere dissimilarities or omissions in prior statements. . .do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness' testimony to be admissible as prior inconsistent statements." **Commonwealth v. Luster**, 71 A.3d 1029, 1043 (Pa.Super. 2013) (*en banc*) (internal quotation marks and quotations omitted).

Here, even if defense counsel had utilized Officers Sprague's and Pollack's written investigation interview records during the cross-examination of Clyburn, the records "would not have casted substantial doubt on the veracity of [Clyburn's] [ ] testimony" as it relates to Bennett's guilt. **Id.** In the investigation interview records, the officers' reports of the statements made to them by Clyburn are substantially similar to Clyburn's preliminary hearing testimony. In both circumstances, Clyburn provided similar detailed facts surrounding her observations. As it relates specifically to Bennett's participation in the murder, the officers' interview records

confirm that Clyburn named Bennett as a participant,[10] and she later consistently identified Bennett as a participant during her preliminary hearing testimony.[11]

Bennett admits these facts; however, he notes that the officers' reports indicate Clyburn initially named "Dion" as one of Bennett's cohorts but then later named "Lewis" as one of Bennett's cohorts during her preliminary hearing testimony. We disagree with Bennett that this dissimilarity in identification as to one of Bennett's co-defendants sufficed as vital impeachment evidence "substantial enough to cast doubt on [Clyburn's] testimony." *See id.* This is particularly true given the fact Bennett insists on appeal that he is not alleging Clyburn did not observe both of his co-

_____

[10] We recognize that Bennett's first name is "Stephon" and not "Stephan" as reported in the officers' written investigation interview records; however, Bennett has developed no argument regarding this discrepancy. In fact, Bennett concedes on appeal that, when Clyburn talked to Officers Sprague and Pollack, she named him as a participant in the murder. *See* Bennett's Brief at 3.

[11] Further, with the exception of "Dion" being named as a participant, the officers' reports of Clyburn's statements are similar to the statements Clyburn made to detectives at the police station at 1:45 a.m. on June 11, 2006. During the interview with detectives at the police station, Clyburn identified Bennett, Shields, and Lewis as the three men she saw in connection with the murder. *See* Bennett's Response, filed 11/10/15, Exhibit A-3. Clyburn's June 11, 2006, interview with the detectives was memorialized in an investigation interview record, which defense counsel had in his possession and utilized during the cross-examination of Clyburn during the preliminary hearing. N.T., 1/5/10, at 154.

defendants (Shields and Lewis) participate in the incident, which led to the victim's death. ***See*** Bennett's Brief at 4.

Moreover, we note that, in ***Luster***, ***supra***, we explained:

 [A] summary of a witness' statement cannot be used for impeachment purposes absent adoption of the statement by the witness as his/her own. The rationale for this rule is: [I]t would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words.

***Id.*** at 1044 (internal quotation marks and quotations omitted).

In the case *sub judice*, the officers' written investigation interview records contained summaries of the officers' recollections of what Clyburn had told them about the instant murder. There is no indication that Clyburn herself had signed, adopted, or reviewed the officers' written investigation interview records in any manner. Given the foregoing, we find no merit to Bennett's claim that, under the dictates of ***Bazemore***, defense counsel did not have a "full and fair opportunity" to cross-examine Clyburn during the preliminary hearing such that her testimony should have been excluded when she became unavailable for trial. Accordingly, trial counsel cannot be ineffective in failing to object to the introduction of the testimony on this basis.

In his next claim, Bennett argues that PCRA counsel was ineffective for failing to raise the previous issue of trial counsel's ineffectiveness.[12] Initially, we note that Bennett is mistaken in his averment that PCRA counsel did not present this claim in his **Turner/Finley** no-merit letter. In any event, based upon our conclusion that the PCRA court properly found trial counsel was not ineffective on this basis, we also conclude that PCRA counsel was not ineffective. **See Commonwealth v. Thomas**, 615 Pa. 477, 44 A.3d 12 (2012).

In his next issue, Bennett argues that trial counsel rendered ineffective assistance of counsel by failing to object to an instance of prosecutorial misconduct at trial. Specifically, Bennett contends that Clyburn offered false testimony during her preliminary hearing testimony, and the prosecutor committed misconduct by knowingly permitting the false testimony to be presented at the jury trial when Clyburn became unavailable as a witness. Bennett contends trial counsel should have objected to the instance of prosecutorial misconduct, and his failure to do so constitutes ineffectiveness.

In support of his claim, Bennett cites to the following portion of Clyburn's preliminary hearing testimony, which was admitted at trial:

---

[12] Bennett preserved this assertion of PCRA counsel's ineffectiveness in his response filed in the PCRA court on November 10, 2015. **See Commonwealth v. Henkel**, 90 A.3d 16 (Pa.Super. 2014) (*en banc*) (indicating claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal).

**Q:** You told us that you gave an interview to the detectives on June 11th, and that document is there in front of you, marked C-2.[13] Do you see that?

**A:** Yes.

**Q:** It says the interview is dated June 11th, do you see that?

**A:** Yes.

**Q:** Prior to June 11th, did you talk to the police at all concerning what happened that night?

**A:** Yes.

**Q:** When was that?

**A:** Say it again.

**Q:** When was it before June 11th that you spoke to the police about what happened that night?

**A:** I didn't.

**Q:** Just so I'm clear then, between December 5, 2005 when these things happened until June 11th, 2006 when you were interviewed, you had no contact with the police; is that correct?

**A:** Correct.

N.T., 1/5/10, at 154-55 (footnote added) (quotation marks omitted). ***See*** Bennett's Brief at 19-20.

Bennett claims that Clyburn testified falsely since, prior to speaking to the detectives during the early morning hours of June 11, 2006, she had contact with Officers Sprague and Pollack during the late evening hours of June 10, 2006, when she was assaulted. He continues that the prosecutor knowingly permitted this "false" testimony to be presented to the jury, and trial counsel was ineffective in failing to object on this basis.

---

[13] We note this is the same document that was attached to Bennett's Response, filed on November 10, 2015, as Exhibit A-3.

Our Supreme Court has stated, "It is. . .an established constitutional principle that a conviction obtained through the knowing use of materially false testimony may not stand; a prosecuting attorney has an affirmative duty to correct the testimony of a witness which he knows to be false." *Commonwealth v. Carpenter*, 472 Pa. 510, 519, 372 A.2d 806, 810 (1977) (citations omitted).

> The prosecution may not knowingly and deliberately misrepresent the evidence in order to gain a conviction. Nevertheless, a claim of purposeful prosecutorial misrepresentation will not stand if examination of the record fails to reveal any indication of deceptive tactics on the part of the prosecution.

*Commonwealth v. Ali*, 608 Pa. 71, 91, 10 A.3d 282, 294 (2010) (citations omitted). "Moreover, when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure [on the part of the Commonwealth] of evidence affecting credibility violates due process." *Cruz-Centeno*, 668 A.2d at 543 (quotations marks and quotation omitted).

In the case *sub judice*, assuming, *arguendo*, Clyburn's testimony contained "materially false testimony" regarding her contact with Officers Sprague and Pollack, there is no indication the prosecutor engaged in any deceptive tactics or nondisclosure relevant thereto as asserted by Bennett. The record reveals that, prior to trial, the Commonwealth provided defense counsel with Officers Sprague's and Pollack's written investigation interview records, wherein the officers set forth the contact and discussion which they had with Clyburn on June 10, 2006. Moreover, the Commonwealth

presented the testimony of Detective Joseph Bamberski, who informed the jury that police officers brought Clyburn to the homicide division to speak to him about the instant murder after she was assaulted. N.T., 1/7/10, at 98, 110-11. Accordingly, the Commonwealth took steps to correct any misstatements made by Clyburn as to her contact with police officers prior to her interview with detectives on June 11, 2006, and thus, there is no arguable merit to Bennett's claim of prosecutorial misconduct. *See Carpenter*, *supra*.

Further, we conclude that Bennett has failed to demonstrate any prejudice resulting from trial counsel's failure to object in this regard. Specifically, at trial, Officer Sprague was called as a defense witness, and he testified in detail to the events surrounding his contact with Clyburn on June 10, 2006. N.T., 1/7/10, at 169-83. In particular, Officer Sprague testified he responded to the assault of Clyburn, and during his discussion with her, she informed him that she had information as to the instant murder. *See id.* Officer Sprague additionally testified that he made a written investigative interview record memorializing the statements Clyburn made to him, and the document was entered into evidence as a defense exhibit. *Id.* at 175-82. Accordingly, Bennett has not demonstrated that he suffered prejudice as a result of counsel's failure to object. *Ligons*, *supra*.

In his next claim, Bennett argues that PCRA counsel was ineffective for failing to raise the previous issue of trial counsel's ineffectiveness.[14] Initially, we note that Bennett is mistaken in his averment that PCRA counsel did not present this claim in his ***Turner/Finley*** no-merit letter. In any event, based upon our conclusion that the PCRA court properly found trial counsel was not ineffective on this basis, we also conclude that PCRA counsel was not ineffective. ***See Thomas***, ***supra***.

In his next issue, Bennett contends that trial counsel was ineffective in failing to investigate Clyburn's mental health history for impeachment purposes. In this regard, Bennett argues that, at his co-defendants' February 27, 2008, preliminary hearings, Clyburn admitted that she took medication for depression. Accordingly, Bennett argues trial counsel should have investigated Clyburn's mental health history, as well as presented her history, so that the jury would be able to assess whether her mental illness affected her ability to accurately observe and recall the events on the day of the murder.

Our Supreme Court has held that:

When a witness suffers from a mental disability relevant to his or her ability to accurately observe, recall or report events, the jury must be informed of the disability in order to assist it in properly assessing the weight and credibility of the witness's testimony.

---

[14] Bennett preserved this assertion of PCRA counsel's ineffectiveness in his response filed in the PCRA court on November 10, 2015. ***See Henkel***, ***supra***.

The evidence can be said to affect credibility when it shows that the witness's mental disorganization impaired his or her capacity to observe an event at the time of its occurrence, to maintain a clear recollection of it, or to communicate the observation accurately and truthfully at trial.

***Commonwealth v. Davido***, 630 Pa. 217, 261, 106 A.3d 611, 637 (2014)

(citations omitted).

Here, the PCRA court opined:

[T]he record lacks evidence that would demonstrate that [Clyburn's] mental health issues adversely affected her credibility by impacting her ability to observe, recall or report what she saw or heard.

Th[e] court [concludes] that the witness' depression, the evidence of which was adduced at the preliminary hearing, was not the kind of disability which would render [ ] Clyburn unreliable and interfere with her ability to observe, recall or report events.

PCRA Court's Opinion, filed 7/15/16, at 18.

The PCRA court's determination is supported by the evidence of record and is free of legal error. ***Ousley***, ***supra***. Bennett has made no showing that Clyburn's credibility was affected by her depression or negatively impacted her abilities to accurately observe, recall, or communicate the facts to which she testified. Instead, Bennett argues in a cursory and speculative fashion that Clyburn's mental health diagnosis had relevant potential impeachment value and trial counsel should have "explored" the issue. ***See*** Bennett's Brief at 30. Accordingly, we agree with the PCRA court that there

is no arguable merit to the underlying claim such that trial counsel may not be deemed ineffective on this basis.[15]

In his next claim, Bennett argues that PCRA counsel was ineffective for failing to raise the previous issue of trial counsel's ineffectiveness.[16] Initially, we note that Bennett is mistaken in his averment that PCRA counsel did not present this claim in his *Turner/Finley* no-merit letter. In any event, based upon our conclusion that the PCRA court properly found trial counsel was not ineffective on this basis, we also conclude that PCRA counsel was not ineffective. *See Thomas*, *supra*.

Finally, to the extent Bennett contends the PCRA court erred in denying his PCRA petition without an evidentiary hearing, we note that a PCRA petitioner is not automatically entitled to an evidentiary hearing. *Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa.Super. 2012). We review the PCRA court's decision to deny a petition without an evidentiary hearing for an abuse of discretion. *See Commonwealth v. Reid*, 627 Pa. 151, 99

_____

[15] Moreover, we note that Clyburn testified at Bennett's co-defendants' preliminary hearing that she had been diagnosed with depression, and she took medication prescribed for her depression. *See* N.T., 1/5/10, at 108-09. This testimony was revealed to the jury and from that revelation the jury is assumed to have used their common sense in evaluating any impact her depression would have upon her credibility.

[16] Bennett preserved this assertion of PCRA counsel's ineffectiveness in his response filed in the PCRA court on November 10, 2015. *See Henkel*, *supra*.

- 18 -

A.3d 470 (2014). In light of the fact Bennett's claims are patently frivolous, as discussed *supra*, we conclude the PCRA court did not err in denying relief without an evidentiary hearing.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/2017